[No. S045174. July 7, 1997.]

THE PEOPLE, Plaintiff and Respondent, v.
JERRY DUANE HAMMON, Defendant and Appellant.

**COUNSEL**

Linnea M. Johnson, under appointment by the Supreme Court, and David S. Reeves, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, J. Robert Jibson, Michael J. Weinberger and Rachelle A. Younger, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**WERDEGAR, J.**—Before trial commenced in this sexual molestation case, defendant served subpoenas duces tecum on psychotherapists who had treated the complaining witness. Although defendant claimed the records would be necessary to challenge the witness's credibility, the trial court quashed the subpoenas on the basis of the psychotherapist-patient privilege. We granted review to decide whether the trial court erred by not first reviewing the records in camera and, if so, what the appropriate remedy on appeal might be.

We determine no error occurred. For reasons we explain, the trial court was not required, at the pretrial stage of the proceedings, to review or grant discovery of privileged information in the hands of third party psychotherapy providers. We reject defendant's claim that pretrial access to such information was necessary to vindicate his federal constitutional rights to confront and cross-examine the complaining witness at trial or to receive a fair trial. We conclude that the line of intermediate state court cases on which defendant relies was wrongly decided and should be disapproved to the extent they suggest a contrary result under these circumstances.

### I. Facts and Procedural Background

Defendant Jerry Duane Hammon has been convicted by a jury of committing lewd and lascivious acts on his foster child, Jacqueline K., when she was between 12 and 13 years old. (Pen. Code, § 288, subd. (a) [lewd and lascivious conduct with child under age 14].) At trial defendant admitted having participated in sexual acts with Jacqueline but denied having done so before her 14th birthday. Jacqueline's testimony was to the contrary. This appeal concerns defendant's unsuccessful pretrial efforts to obtain access to the records of Jacqueline's psychotherapists for the purpose of challenging her credibility on cross-examination.

Jacqueline K. moved in with defendant and his wife in September 1987, when Jacqueline was 12 years old. Jacqueline turned 14 on September 18, 1989; she remained at defendant's home until 1991, when she left to live with new foster parents. In January 1993, when she became engaged to be married, Jacqueline told her new foster mother and fiancé that she had engaged in sexual activity with defendant while living in his home. The new foster mother reported this to the police. Detective Barone interviewed Jacqueline and persuaded her to telephone defendant and attempt to induce him to admit what he had done. Jacqueline made the telephone call, which Barone secretly tape-recorded. In the recorded conversation, defendant seemed to agree with Jacqueline's statements the two had "had sex." Detective Barone then met with defendant. When confronted with the tape recording, defendant denied having engaged in sexual conduct with Jacqueline and asserted that Jacqueline used the word "sex" to mean "talking about sex."

The district attorney charged defendant with 11 counts of lewd and lascivious conduct with a minor under the age of 14. (Pen. Code, § 288, subd. (a).) The court subsequently granted the district attorney's motion to dismiss three counts. Of the remaining eight counts, two (sexual intercourse) were alleged to have occurred between December 1987 and February 1988, three (sexual intercourse and oral copulation) between February and April 1988, and three (sexual intercourse and oral copulation) between May and August 1988.

Before trial commenced, defendant asked the court to review in camera Jacqueline's child protective services (CPS) file and disclose, to the extent authorized by statute, any material information contained therein. (See Welf. & Inst. Code, § 827.) Defendant also issued subpoenas duces tecum to three psychologists who had treated Jacqueline while she was living in defendant's home, and to the schools she had attended. The court enforced the subpoenas directed to the schools to the extent they sought attendance records, on the theory that such records might support an alibi defense. The court also conducted a limited review of the CPS file and released some of its contents to the defense. Although the CPS file contained reports about Jacqueline by unidentified psychologists, the court did not release those reports. Noting that "[t]he reports did contain some information that could be relevant at least to credibility," the court nevertheless found that "the [d]efendant's need to know [was] outweighed by the juvenile's right to confidentiality."

The People asked the court to quash the subpoenas directed to the three psychologists based on Jacqueline's assertion of the psychotherapist-patient privilege.[1] (Evid. Code, § 1014.) Opposing the motion to quash, defense counsel argued that information about Jacqueline's psychological history was necessary in order to challenge her credibility on cross-examination. To support his theory that Jacqueline's psychological history was relevant, defense counsel submitted his own declaration to the effect that "all psychological records will provide evidence of the existence or nonexistence of said molestations. [¶] The records in question are necessary to prove the victim's lack of credibility, her propensity to fantasize and imagine events that never occurred." At the hearing on the motion, defense counsel also referred to a document that does not appear in the record on appeal, but which counsel described orally as a CPS caseworker's note about a dependency review hearing that took place in February or March of 1988. The note indicated, in

---

[1]In response to the subpoenas, only psychologist Jerry Curtis actually produced documents to the court. Psychologist Jane Nixon informed defense counsel that she wished to move to quash but never formally responded to the subpoena. Dr. Kent Caruso reported that his records had been destroyed in the ordinary course of business after three years.

counsel's words, that Jacqueline was referred to psychologist Nixon on account of "a propensity to say whatever she feels will pass it by the person that she is talking to at that point in time." As authority for the court's power to review privileged records in camera and to disclose them as appropriate, after weighing defendant's need for them against the patient's interest in confidentiality, counsel cited *People* v. *Reber* (1986) 177 Cal.App.3d 523 [223 Cal.Rptr. 139], and cases following that decision.

The court quashed the subpoenas. While accepting defendant's argument that *People* v. *Reber, supra,* 177 Cal.App.3d 523, would require the court to review the requested records in camera on a proper showing of good cause, the court nevertheless found defendant's showing inadequate. Defense counsel's declarations, the court explained in a written order, "fail to identify any particular information which would be of benefit to the [d]efendant. It is not adequate to simply contend that 'all psychological records will provide evidence of the existence or nonexistence of said molestations' or 'are necessary to prove the victim's lack of credibility, her propensity to fantasize and imagine events that never occurred.' Such a holding would essentially result in an 'in camera' hearing in any case where the complaining witness had received psychiatric/psychological counseling."

The ensuing trial amounted, in essence, to a contest of credibility between Jacqueline and defendant. Jacqueline testified the charged offenses had occurred before her 14th birthday. She attempted to fix the timing of the offenses by reference to certain events, such as the time she moved into defendant's house, the time she received a bicycle, the time her leg was in a cast, and the time she visited Fort Bragg with defendant. Defendant, who testified on his own behalf, admitted he had had sexual intercourse with Jacqueline on several occasions. He denied, however, having done so before her 14th birthday. He also specifically denied ever having participated in oral sex with Jacqueline. Defendant's wife testified that Jacqueline had received the bicycle as a birthday or Christmas present after she turned 14, and that she did not until later begin to leave Jacqueline at home alone with defendant. Testimony by other defense witnesses concerned the likelihood that Jacqueline would, or would not, have been left alone with defendant on particular occasions. The jury also heard the parties' stipulation that all of the psychologists treating Jacqueline during the relevant time period had had a legal obligation to report sexual abuse, if suspected, and none had done so.

The jury acquitted defendant of the acts alleged to have occurred between December 1987 and February 1988, shortly after Jacqueline moved into defendant's home, and convicted on the remaining counts. The jury found true, as to each count, the allegation that defendant had occupied a position

of special trust as a foster parent. (Pen. Code, § 1203.066, subd. (a)(9).) Based on the verdict, the court sentenced defendant to the aggregate term of 14 years in state prison.

On appeal, defendant contended the court erred in quashing the subpoenas directed to Jacqueline's psychologists. The Court of Appeal affirmed, essentially for the same reasons the trial court gave in its written order. Accepting, like the trial court, defendant's argument the trial court would need to review the subpoenaed records in camera upon a proper showing of good cause, the Court of Appeal concluded defendant had failed to show good cause. "It is not enough," the court reasoned, "for defendant to have asserted that Jacqueline, five years earlier, entered therapy or counseling because, in some unspecified manner, she had a tendency to tell her social workers what they wanted to hear. First, it is not a relevant time period; assuming Jacqueline had a tendency in 1988 to fabricate stories, it did not manifest itself at that time to suggest that she was being sexually molested, and there was no showing that this claimed tendency of hers was a matter of concern in 1993, the time she reported the crimes and testified at trial. Second, there was no showing that this tendency involves distorted perception, hallucination or inability to distinguish fact from fantasy, as in schizophrenia or other forms of psychosis. Finally, there was no showing that this tendency involves false accusations as opposed to more innocuous fabrications."

## II. DISCUSSION

█  In granting review, we instructed the parties to brief only the issues of whether the trial court erred by not reviewing the subpoenaed records in camera and, if so, what the proper remedy on appeal might be.[2] The only records the trial court declined to review in camera were those defendant sought from Jacqueline's psychologists. While defendant also sought access to Jacqueline's high school and juvenile court records, the trial court did review those records and disclose some of them to the defense. Thus, in asking whether the trial court had a duty to review confidential or privileged records in camera, we are concerned exclusively with the records requested from the psychologists.

As mentioned, the lower courts concluded defendant had not made a showing of good cause sufficient to require the trial court to review the subpoenaed records in camera. As will appear, we agree no review was required, but for different reasons.

---

[2] The order provided: "The issue to be argued before this court shall be limited to whether the trial court erred by not conducting an in camera review of confidential or privileged records sought in discovery and, if so, what is the appropriate remedy on appeal." (Cal. Rules of Court, rule 29.2(b).)

In seeking disclosure of documents protected by the psychotherapist-patient privilege, defendant relied on *People* v. *Reber, supra,* 177 Cal.App.3d 523, and cases following that decision. (E.g., *People* v. *Dancer* (1996) 45 Cal.App.4th 1677, 1691 [53 Cal.Rptr.2d 282]; *People* v. *Boyette* (1988) 201 Cal.App.3d 1527, 1531-1533 [247 Cal.Rptr. 795]; cf. *People* v. *Pack* (1988) 201 Cal.App.3d 679, 684-686 [248 Cal.Rptr. 240] [acknowledging *Reber* but declining to order review of privileged documents based on the defendant's "minimal showing"]; *People* v. *Caplan* (1987) 193 Cal.App.3d 543, 557-558 [238 Cal.Rptr. 478] [citing *Reber* as an alternative ground for requiring review in camera of privileged documents].) This line of authority, we now determine, is not correct. The court in *Reber* believed the confrontation clause of the Sixth Amendment (U.S. Const., 6th Amend.), as interpreted in *Davis* v. *Alaska* (1974) 415 U.S. 308 [94 S.Ct. 1105, 39 L.Ed.2d 347], required pretrial disclosure of privileged information when the defendant's need for the information outweighed the patient's interest in confidentiality. In authorizing disclosure before trial, however, *Reber* went farther than *Davis* required, with insufficient justification.

The defendants in *Reber* were charged with kidnapping and committing various sexual assaults upon two victims, one developmentally handicapped and the other mentally ill. The defendants, who claimed the victims had hallucinated the assaults, sought to obtain the victims' psychotherapeutic records by subpoena duces tecum. Counsel asserted the records would show that both victims had histories of mental illness and severe delusions. The trial court quashed the subpoenas on the basis of the psychotherapist-patient privilege; the Court of Appeal reversed. "[A]dherence to a statutory privilege of confidentiality," the court wrote, "must give way to pretrial access when it would deprive a defendant of the constitutional right of confrontation and cross-examination." (*People* v. *Reber, supra,* 177 Cal.App.3d at p. 531.) To protect the right of confrontation, the court concluded, the trial court should have "(1) obtain[ed] and examine[d] in camera all the materials under subpoena, (2) weigh[ed] defendants' constitutionally based claim of need against the statutory privilege invoked by the People, (3) determine[d] which privileged matters, if any, were essential to the vindication of defendants' rights of confrontation and (4) create[d] a record adequate to review its ruling." (*Reber, supra,* 177 Cal.App.3d at p. 532.)

To support the proposition that a defendant's need for information can outweigh the psychotherapist-patient privilege, the court in *Reber* (*supra,* 177 Cal.App.3d at pp. 529-530) relied on *Davis* v. *Alaska, supra,* 415 U.S. 308 (*Davis*). In *Davis,* which addressed trial rights, the United States Supreme Court held that a criminal defendant's right to confront adverse witnesses sometimes requires the witness to answer questions that call for

information protected by state-created evidentiary privileges. The decision in *Davis* did not compel the *Reber* court's conclusions about the effect of the confrontation clause on *pretrial* discovery.

The defendant in *Davis, supra*, 415 U.S. 308, was charged with burglarizing a bar and stealing its safe. A crucial witness for the prosecution testified he had seen the defendant with a crowbar near the place where the empty safe was discovered. At the time of trial, the witness was on juvenile probation, having been adjudicated a delinquent after burglarizing two cabins. Despite defense counsel's argument that he needed on cross-examination to reveal to the jury the witness's possible bias, the trial court refused to permit counsel to inquire into the subject. The Alaska Supreme Court affirmed the ensuing judgment of guilt on the ground a state statute made the witness's probationary status confidential. The United States Supreme Court reversed.

The confrontation clause of the Sixth Amendment, the high court wrote, entitled the defendant to expose the possible bias of a key prosecution witness despite Alaska's confidentiality statute. "The State's policy interest in protecting the confidentiality of a juvenile offender's record cannot require yielding of so vital a constitutional right as the effective cross-examination for bias of an adverse witness. The State could have protected [the witness] from exposure of his juvenile adjudication in these circumstances by refraining from using him to make out its case; the State cannot, consistent with the right of confrontation, require the [defendant] to bear the full burden of vindicating the State's interest in the secrecy of juvenile criminal records." (*Davis, supra*, 415 U.S. at p. 320 [94 S.Ct. at p. 1112].)

By its terms, the decision in *Davis, supra*, 415 U.S. 308, involved a defendant's *trial rights* only: The court held a defendant could not be prevented at trial from cross-examining for bias a crucial witness for the prosecution, even though the question called for information made confidential by state law. In extending *Davis* to apply to pretrial rights, the court in *People* v. *Reber, supra*, 177 Cal.App.3d 523, appears to have assumed that a defendant might obtain before trial any information he would be able under *Davis* to obtain at trial. That assumption, however, is called into question in light of the United States Supreme Court's decision in *Pennsylvania* v. *Ritchie* (1987) 480 U.S. 39 [107 S.Ct. 989, 94 L.Ed.2d 40] (*Ritchie*), which was handed down shortly after *Reber, supra*, 177 Cal.App.3d 523.

In *Ritchie, supra*, 480 U.S. 39, the United States Supreme Court considered the circumstances under which the due process clause of the Fourteenth Amendment entitled the defendant in a child molestation case to obtain

pretrial discovery of the files of Pennsylvania's children and youth services agency to determine whether they would assist in his defense at trial. The statutory scheme evidently authorized the agency to investigate cases in which the child abuse had been reported to the police; information compiled during the agency's investigation was made confidential, subject to numerous exceptions, including court-ordered disclosure. Applying the rule of *Brady* v. *Maryland* (1963) 373 U.S. 83, 87 [83 S.Ct. 1194, 1196-1197, 10 L.Ed.2d 215,], which generally requires the prosecution to turn over to the defense all material exculpatory information *in the government's possession*, the court in *Ritchie* held that under the circumstances of that case due process principles required the trial court to review the agency records in camera to determine whether disclosure was required. (In reaching this conclusion on the basis of the particular statutory scheme there involved, the *Ritchie* court left open the possibility that the result under the due process principles of *Brady* might have been different if the applicable statute had granted the children and youth services agency "absolute" authority to prevent the disclosure of its confidential files. (*Ritchie, supra*, 480 U.S. at p. 57 & fn. 14 [107 S.Ct. at p. 1001].)[3]

In addition to raising a Fourteenth Amendment due process claim under *Brady* v. *Maryland, supra*, 373 U.S. 83, the defendant in *Ritchie, supra*, 480 U.S. 39, argued that the compulsory process and confrontation clauses of the Sixth Amendment conferred a right to discover, before trial, information necessary to make cross-examination effective. The high court, however, left these questions undecided: "Because the applicability of the Sixth Amendment to this type of case is unsettled, and because our Fourteenth Amendment precedents addressing the fundamental fairness of trials establish a clear framework for review, we adopt a due process analysis for purposes of this case. Although we conclude that compulsory process provides no greater protections in this area than those afforded by due process, we need not

---

[3]Defendant suggests the information he sought from Jacqueline's psychologists may have been in the government's possession within the meaning of *Ritchie* (*supra*, 480 U.S. at pp. 56-57 [107 S.Ct. at pp. 1000-1001]) and *Brady* v. *Maryland* (*supra*, 373 U.S. at p. 87 [83 S.Ct. at pp. 1196-1197]). The information may have been duplicated in the CPS file, defendant speculates, because the trial court, after reviewing the file, noted it contained unspecified "psychiatric/psychological reports regarding the minor." Implicitly conceding this cryptic statement alone would not permit a reviewing court to conclude the particular information he sought by subpoena was in the government's possession, defendant contends the trial court should have identified the documents it reviewed in order to facilitate meaningful appellate review. Defendant, however, did not ask the trial court to make such a record.

Defendant would also invoke *Ritchie, supra*, 480 U.S. 39, and *Davis, supra*, 415 U.S. 308, on the theory that one or more of Jacqueline's psychologists treated her on referral from, or was paid by, CPS or her school. Defendant, however, cites no decision concluding that records physically in the hands of private psychologists, and which have been sought through subpoenas directed to private parties, fall within *Ritchie* or *Brady* merely because the government referred the patient or paid for treatment. In our view, the contention lacks merit.

decide today whether and how the guarantees of the Compulsory Process Clause differ from those of the Fourteenth Amendment. It is enough to conclude that on these facts, [the defendant's] claims more properly are considered by reference to due process." (*Ritchie, supra*, 480 U.S. at p. 56 [107 S.Ct. at p. 1001].)

Although in *Ritchie, supra*, 480 U.S. 39, no majority consensus emerged concerning the proper application of the confrontation clause of the Sixth Amendment to the pretrial discovery issue presented in that case, seven of the justices did speak to the effect on the issue of the decision in *Davis, supra*, 415 U.S. 308. In the lead opinion, four justices expressed the view that the "right to confrontation [articulated in the Sixth Amendment] is a *trial right*, designed to prevent improper restrictions on the types of questions that defense counsel may ask during cross-examination. . . . The ability to question adverse witnesses . . . does not include the power to require the pretrial disclosure of any and all information that might be useful in contradicting unfavorable testimony." (480 U.S. at pp. 52-53 [107 S.Ct. at p. 999] (opn. of Powell, J., concurred in by Rehnquist, C. J., White and O'Connor, JJ.), italics added.) In two separate opinions, three other justices indicated they believed that denying a defendant pretrial access to information necessary to make cross-examination effective could in some circumstances violate the confrontation clause. (*Id.* at pp. 61-66 [107 S.Ct. at pp. 1003-1006] (conc. opn. of Blackmun, J.); *id.* at pp. 66-72 [107 S.Ct. at pp. 1006-1009] (dis. opn. of Brennan, J., concurred in by Marshall, J.).) The two remaining justices expressed no view on this issue, concluding that the writ of certiorari should have been dismissed for want of a final judgment. (See *Ritchie, supra*, 480 U.S. at pp. 72-78 [107 S.Ct. at pp. 1009-1012] (dis. opn. of Stevens, J., joined by Scalia, J., as well as by Brennan and Marshall, JJ.).)

As we have previously observed, in light of the divided views of the justices of the Supreme Court as reflected in the several opinions in *Ritchie, supra*, 480 U.S. 39, it is not at all clear "whether or to what extent the confrontation or compulsory process clauses of the Sixth Amendment grant pretrial discovery rights to the accused." (*People* v. *Webb* (1993) 6 Cal.4th 494, 517-518 [24 Cal.Rptr.2d 779, 862 P.2d 779]; *Delaney* v. *Superior Court* (1990) 50 Cal.3d 785, 805-806, fn. 18 [268 Cal.Rptr. 753, 789 P.2d 934].) In *Webb, supra*, 6 Cal.4th at pages 517-518, we considered the effect of *Ritchie* on a capital defendant's claim that he had been wrongly denied pretrial access to confidential records in the hands of psychotherapists who had treated a key prosecution witness at her private behest. Because the trial court in *Webb* had reviewed the records in camera and had disclosed before trial what little relevant information they contained, we concluded that defendant had failed on appeal to demonstrate either error or prejudice.

Indeed, we suggested that the defendant may well have received more information than *Ritchie* required. We observed in this regard: "The records were not generated or obtained by the People in the course of a criminal investigation, and the People have had no greater access to them than defendant. Given the strong policy of protecting a patient's treatment history, it seems likely that defendant has no constitutional right to examine the records even if they are 'material' to the case." (*Webb, supra,* 6 Cal.4th at p. 518.)

Nevertheless, defendant asks us to hold that the Sixth Amendment confers a right to discover privileged psychiatric information before trial. We do not, however, see an adequate justification for taking such a long step in a direction the United States Supreme Court has not gone. Indeed, a persuasive reason exists not to do so. When a defendant proposes to impeach a critical prosecution witness with questions that call for privileged information, the trial court may be called upon, as in *Davis,* to balance the defendant's need for cross-examination and the state policies the privilege is intended to serve. (See *Davis, supra,* 415 U.S. at p. 319 [94 S.Ct. at p. 1112].) Before trial, the court typically will not have sufficient information to conduct this inquiry; hence, if pretrial disclosure is permitted, a serious risk arises that privileged material will be disclosed unnecessarily.

The facts of the case before us illustrate the risk inherent in entertaining such pretrial requests. Defendant sought disclosure of Jacqueline's psychotherapy records on the theory that such "records [would] provide evidence of the existence or nonexistence of said molestations . . . . [and would be] necessary to prove the victim's lack of credibility, her propensity to fantasize and imagine events that never occurred." In fact, defendant at trial admitted engaging in sexual conduct with his foster daughter, thus largely invalidating the theory on which he had attempted to justify pretrial disclosure of privileged information. Pretrial disclosure under these circumstances, therefore, would have represented not only a serious, but an *unnecessary,* invasion of the patient's statutory privilege (Evid. Code, § 1014) and constitutional right of privacy (Cal. Const., art. I, § 1; see *People* v. *Stritzinger* (1983) 34 Cal.3d 505, 511-512 [194 Cal.Rptr. 431, 668 P.2d 738] [recognizing the psychotherapist-patient privilege as an aspect of the privacy right]).

Similar concerns surfaced in *People* v. *Reber, supra,* 177 Cal.App.3d 523. After concluding the trial court erred in failing to review the victims' psychological records in camera, the *Reber* court went on to find the error harmless. It was harmless, the court determined, for two reasons: The jury learned about the victims' psychological history through other evidence, and

the physical evidence negated the defendants' theory that the victims had fantasized the assaults. (*Reber*, *supra*, 177 Cal.App.3d at p. 532.)

For the reasons stated, therefore, we decline to extend the defendant's Sixth Amendment rights of confrontation and cross-examination to authorize pretrial disclosure of privileged information. Of course, nothing we say here is intended to address the application *at trial* of the principles articulated in *Davis*, *supra*, 415 U.S. 308. Nor do we have an occasion in this case to revisit the question of whether a defendant may generally obtain pretrial discovery of unprivileged information in the hands of private parties. That the defense may issue subpoenas duces tecum to private persons is implicit in statutory law (Pen. Code, §§ 1326, 1327) and has been clearly recognized by the courts for at least two decades. (*Millaud* v. *Superior Court* (1986) 182 Cal.App.3d 471, 475-476 [227 Cal.Rptr. 222]; *Pacific Lighting Leasing Co.* v. *Superior Court* (1976) 60 Cal.App.3d 552, 559-566 [131 Cal.Rptr. 559].) However, this more general right provides no basis for overriding a statutory and constitutional privilege.

For these reasons, we conclude the trial court did not err in refusing to review in camera the documents sought by subpoena.

## III.  DISPOSITION

The judgment of the Court of Appeal is affirmed.

George, C. J., Baxter, J., Chin, J., and Brown, J., concurred.

**MOSK, J.**—I concur in the result. Any error that the superior court may have committed by quashing the subpoenas duces tecum that defendant served on the psychotherapists for the records of their treatment of his former foster daughter does not require reversal. Even if such error should violate the United States Constitution, it would be subject to review under the harmless-beyond-a-reasonable-doubt standard of *Chapman* v. *California* (1967) 386 U.S. 18 [87 S.Ct. 824, 17 L.Ed.2d 705, 24 A.L.R.3d 1065], and would pass scrutiny thereunder: Defendant sought the records in question to raise a reasonable doubt whether he had in fact engaged in sexual activity with the girl; subsequently, on the witness stand, he admitted he had.

Beyond the result, however, I do not concur. Without warrant, the majority sweep away what had heretofore been settled law in California—law that was articulated in Presiding Justice Puglia's opinion for a unanimous court in *People* v. *Reber* (1986) 177 Cal.App.3d 523 [223 Cal.Rptr. 139] (hereafter sometimes *Reber*), and was subsequently applied in such decisions as *People*

v. *Boyette* (1988) 201 Cal.App.3d 1527 [247 Cal.Rptr. 795], *Rubio* v. *Superior Court* (1988) 202 Cal.App.3d 1343 [249 Cal.Rptr. 419], and *People* v. *Dancer* (1996) 45 Cal.App.4th 1677 [53 Cal.Rptr.2d 282].

*Reber* holds that a state law evidentiary privilege, like that for communications between psychotherapist and patient, may have to yield to a defendant's right under the Sixth Amendment to confront the witnesses against him—which includes a right physically to face such adverse witnesses and a right to subject them to cross-examination (*Delaware* v. *Fensterer* (1985) 474 U.S. 15, 18-19 [106 S.Ct. 292, 293-294, 88 L.Ed.2d 15] (*per curiam*)).

To the extent that *Reber*'s rule controls the presentation of evidence at trial, it is compelled by *Davis* v. *Alaska* (1974) 415 U.S. 308 [94 S.Ct. 1105, 39 L.Ed.2d 347] (hereafter sometimes *Davis*). There, the defendant was charged in state court with crimes including burglary. Prior to trial, the state court issued a protective order on the prosecution's motion prohibiting the questioning of one of its key witnesses concerning both his adjudication as a juvenile delinquent for an unrelated burglary and also his status as a probationer at the time of the burglary with which defendant was charged, evidence of such matters being generally inadmissible under state law in order to preserve the confidentiality of the juvenile delinquent's record. At trial, on direct examination, the witness inculpated the defendant. On cross-examination, however, he himself was shielded by the protective order. The defendant was convicted. On appeal, the state supreme court affirmed. But, on certiorari, the United States Supreme Court reversed. It held that the defendant was denied his Sixth Amendment right of confrontation—which entailed a "right" to conduct the "effective cross-examination for bias of an adverse witness" and, at bottom, reflected a "right . . . to seek out the truth in the process of defending himself" (*id.* at p. 320 [94 S.Ct. at p. 1112]): The defendant was entitled to attempt to show that the witness was biased because of his vulnerable status as a probationer and his concern that he might be a suspect in the charged burglary; such entitlement was paramount to the state's interest in preserving the confidentiality of a juvenile delinquent's record.

To the extent that *Reber*'s rule controls the discovery of information and material prior to trial, it is supported by *Davis*'s rationale. Under *Davis*, as stated, a defendant's Sixth Amendment right of confrontation entails a "right" to conduct the "effective cross-examination . . . of . . . adverse witness[es]" and, at bottom, reflects a "right . . . to seek out the truth in the process of defending himself." (*Davis* v. *Alaska, supra,* 415 U.S. at p. 320 [94 S.Ct. at p. 1112].) Although he may happen to cross-examine an adverse witness only in the course of trial, to do so effectively he may have to

undertake preparations long before. More generally, to defend himself meaningfully, he must usually seek out the truth immediately: He cannot wait until the cause is called to trial. (See *People* v. *Daniels* (1991) 52 Cal.3d 815, 879 [277 Cal.Rptr. 122, 802 P.2d 906].) *Reber* acknowledges the distinction between the presentation of evidence at trial and the discovery of information and material prior thereto. But this "distinction," it explains, "is one without a difference. The exercise of the power of a trial court to provide for discovery in criminal cases is consistent with ' "the fundamental proposition that [the accused] is entitled to a fair trial and an intelligent defense in light of all relevant and reasonably accessible information." ' . . . One of the legitimate goals of discovery is to obtain information ' "for possible use to impeach or cross-examine an adverse witness . . . ." ' " (*People* v. *Reber*, *supra*, 177 Cal.App.3d at p. 531.)

The majority sweep all this away. To be precise, they do not touch *Reber*'s holding that a state law evidentiary privilege may have to yield to a defendant's Sixth Amendment right of confrontation *at trial*. They cannot: It is compelled by *Davis*. Rather, they disapprove *Reber*'s holding that such a privilege may have to give way to this right *in pretrial discovery*. Their result is wrong as a matter of practicality. Although they should have continued to promote the "orderly ascertainment of the truth" through disclosure prior to trial (*Jones* v. *Superior Court* (1962) 58 Cal.2d 56, 60 [22 Cal.Rptr. 879, 372 P.2d 919, 96 A.L.R.2d 1213]), they choose instead to ensure the opposite by effectively delaying disclosure until after trial commences and then requiring continuances as they become necessary, as indeed they will. Worse still, their result is wrong as a matter of principle. They do not disapprove *Reber*'s holding because they conclude that it is wrong. Rather, they do so because the United States Supreme Court has not yet concluded that it is right. They rely on *Pennsylvania* v. *Ritchie* (1987) 480 U.S. 39 [107 S.Ct. 989, 94 L.Ed.2d 40]. Which means that they rely on nothing. There, Justice Powell expressed the view that a defendant's Sixth Amendment right of confrontation is a "*trial* right," and not a "constitutionally compelled rule of pretrial discovery." (*Id.* at p. 52 [107 S.Ct. at p. 999] (plur. opn. by Powell, J.), italics in original.) He did not command a majority. For their part, Justice Blackmun and Justice Brennan each expressed a view to the contrary. (*Id.* at pp. 61-65 [107 S.Ct. at pp. 1003-1005] (conc. opn. of Blackmun, J.); *id.* at pp. 66-72 [107 S.Ct. at pp. 1006-1009] (dis. opn. of Brennan, J.).) Like Justice Powell, neither commanded a majority, nor did both together. It should hardly need mention that "[w]e are under a solemn obligation to interpret and implement the United States Constitution" (*People* v. *Harris* (1994) 9 Cal.4th 407, 449, fn. 1 [37 Cal.Rptr.2d 200, 886 P.2d 1193] (conc. and dis. opn. of Mosk, J.))—especially when, as here, the United States Supreme Court has itself defaulted. "We are no less capable of discharging

that duty than any other court. We 'should disabuse [ourselves] of the notion that in matters of constitutional law and criminal procedure we must always play Ginger Rogers to the high court's Fred Astaire—always following, never leading.' " (*Ibid.*, quoting *People* v. *Cahill* (1993) 5 Cal.4th 478, 557-558 [20 Cal.Rptr.2d 582, 853 P.2d 1037] (dis. opn. of Kennard, J.).)

And so, the majority, in effect, leave to another day the question whether a state law evidentiary privilege may have to yield to a defendant's Sixth Amendment right of confrontation in pretrial discovery. That day may not come until the United States Supreme Court happens to give an answer. Unless, that is, this court should accept its responsibility to address the matter even in the absence of word from Washington.

**KENNARD, J.,** Concurring and Dissenting.—I concur in the judgment. As indicated by my concurring and dissenting opinion in *People* v. *Webb* (1993) 6 Cal.4th 494, 537 [24 Cal.Rptr.2d 779, 862 P.2d 779], I am of the view that the Sixth Amendment affords criminal defendants a right to pretrial discovery of privately held and privileged documents when discovery is necessary to a fair trial. To invoke the right, however, a criminal defendant must first make a showing of good cause for discovery. In this context, good cause means a reasonable likelihood that the documents contain information that is both material and favorable to the defense and that the same or comparable information is not obtainable from nonprivileged sources. If the defendant makes this showing, then the trial court is required to examine the documents in camera, to balance the interests served by the privilege against a defendant's right to a fair trial, and to disclose the documents in whole or in part to the extent that this balance tilts in the defendant's favor. (See *People* v. *Reber* (1986) 177 Cal.App.3d 523, 531-532 [223 Cal.Rptr. 139]; see also *State* ex rel. *Romley* v. *Superior Court* (1992) 172 Ariz. 232, 234-240 [836 P.2d 445, 452-454]; *State* v. *Joyner* (1993) 225 Conn. 450, 477-479 [625 A.2d 791, 805-806]; *State* v. *Pinder* (Fla.Dist.Ct.App. 1996) 678 So.2d 410, 415-417; *Com.* v. *Fuller* (1996) 423 Mass. 216, 223-227 [667 N.E.2d 847, 853-855]; *People* v. *Stanaway* (1994) 446 Mich. 643, 649-651 [521 N.W.2d 557, 562]; *State* v. *Hummel* (Minn. 1992) 483 N.W.2d 68, 71-72; *State* v. *Newton* (Mo.Ct.App. 1996) 925 S.W.2d 468, 471-472; *State* v. *Trammell* (1989) 231 Neb. 137, 142-143 [435 N.W.2d 197, 201]; *State* v. *Cressey* (1993) 137 N.H. 402, 413 [628 A.2d 696, 703-704]; *State* v. *L.J.P.* (1994) 270 N.J. Super. 429, 439 [637 A.2d 532, 537]; *State* v. *Luna* (1996) 122 N.M. 143, 145-146 [921 P.2d 950, 952-953]; *State* v. *Behnke* (1996) 203 Wis.2d 43, 48-50 [553 N.W.2d 265, 268-269].)

In this sexual molestation prosecution, defendant sought to discover the psychotherapy records of the complaining witness, Jacqueline K., but he

failed to make the required showing of good cause. Defendant effectively conceded that the records were not material on the issue of his guilt or innocence. He argued only that they were relevant to the complaining witness's credibility. Defendant did not allege, much less produce evidence, that the witness suffers from a specific psychiatric disorder that might affect her ability to accurately relate facts. As the complaining witness's former foster parent, defendant would normally have been informed of any such diagnosis. Rather, defendant asserted that the therapy records were material because they might contain evidence of the witness's propensity to fabricate and fantasize, particularly about sexual matters. In support of this hypothesis, defendant offered only a social worker's note stating that the minor had a tendency to tell social workers what she thought they wanted to hear. But this note was remote in time, it did not relate to sexual matters, and it did not indicate a tendency to fantasize or to make false accusations. In short, the note tended to show only the complaining witness's compliant behavior with social workers at age 12; it provided no basis for suspecting that at age 17 the complaining witness would make false accusations of sexual molestation against a foster parent. Accordingly, the trial court did not err in declining to review the psychotherapy records in camera, and on this basis I join the majority in affirming the Court of Appeal's judgment.

Appellant's petition for a rehearing was denied September 17, 1997. Mosk, J., and Kennard, J., were of the opinion that the petition should be granted.