Filed 3/13/26  P. v. Bese CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>LUKE MICHAEL BESE,<br><br>Defendant and Appellant. | F086644<br><br>(Super. Ct. No. F20902967)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  Alvin M. Harrell III, Judge.

Amanda K. Moran and S. Eric Bishop II, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Ivan P. Marrs and Angelo S. Edralin, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Defendant Luke Michael Bese was convicted of communicating with a minor with the intent to commit a sexual offense and annoying or molesting a minor. On appeal, he argues insufficient evidence supports his convictions and the trial court erred by not granting discovery requests for the victim's mental health records or conducting an in camera review of the records. We affirm.

## PROCEDURAL SUMMARY

The District Attorney of Fresno County filed an information on November 22, 2021, charging defendant with communication with a minor with the intent to commit a sexual offense (Pen. Code, § 288.3, subd. (a);[1] count 1) and annoying or molesting a minor under the age of 18 (§ 647.6, subd. (a)(1); count 2).

After defendant waived his right to a jury trial, the trial court found defendant guilty on both counts on May 26, 2023. Defendant filed a motion for a new trial or, in the alternative, a request to reduce count 1 to a misdemeanor on July 10, 2023. The court denied defendant's motion for a new trial and sentenced him to the middle term of one year in prison on count 1 and one day in jail on count 2 on July 11, 2023. The court recalled defendant's sentence pursuant to sections 1170, subdivision (b) and 1172.1 and resentenced him to the low term of eight months on count 1 on July 28, 2023.

Defendant filed a timely notice of appeal on July 28, 2023.

## FACTUAL SUMMARY

**The People's Case**

Defendant, who was born in 1993, was a youth pastor at his church. In this role, defendant was a mentor or spiritual leader for a group of about three to seven youths. M.W., who was one of the members in defendant's youth group, met defendant in 2018 when she was 15 years old. The group gathered once per week, and M.W. met with defendant multiple times per week in his office at the church.

---

[1] Undesignated statutory references are to the Penal Code.

2.

Around August 2018, defendant and M.W. began communicating through text messages and social media applications. Their communications started as "basic friend[-]type conversations," including sharing pictures of their pets or "simple conversation about day-to-day things."

M.W. spoke with A.B., defendant's wife, regarding the subject of pornography. A.B. suggested M.W. speak with defendant because he had "struggled with that issue himself previously." M.W. and defendant discussed the subject, and some time afterwards, defendant told M.W. he would rather her "engage in physical activity without watching to fix that desire." He also stated he would rather she look at pornography than harm herself physically.

Defendant and M.W. also discussed the subject of masturbation on more than one occasion. Defendant told her it would help release anxiety so that she did not feel the need to hurt herself. Because M.W. did not know what masturbation was at the time, defendant gave her a "little anatomy lesson" and told her about "certain areas on a female body," including the clitoris. Defendant explained to her "[s]tep-by-step" how to masturbate. Defendant suggested she use her hands, "vibrators," or "[o]bjects that were small enough to fit inside" her vagina. M.W. felt uncomfortable because "he was trying to help [her] do it, in a way." Defendant also told her she could think of him "while doing it" to "make it easier." Defendant gave M.W. several vibrators by "slipp[ing] them [into her] backpack when [they had] lunch at school."

Defendant sent several pictures to M.W. of himself, which were focused on the area of his "lap." Although he was wearing clothing in the pictures, she could see the "shape" of his penis. Defendant also sent M.W. a video of him putting a male condom on a cucumber so that she could understand "how it works."

Defendant also sent M.W. pictures of A.B. while she was in her underwear. Defendant told M.W. about the "romantic fun" he would have with A.B., although he did

3.

not go into specific detail. At one point, defendant told M.W. that he "wouldn't mind having a threesome" with her and A.B.

A youth group holiday event was held at the church in October 2018. Defendant wrapped his arms around M.W. in a "hug" while they were alone in the kitchen. He touched and felt the sides of M.W.'s stomach area and told her that she was "skinny." His touch made M.W. feel uncomfortable, and she told him to stop. M.W. told A.B. about the incident later that night.

Rules were set on the communication between defendant and M.W. in January or February 2019. These rules were set by "[p]eople" at M.W.'s school, including A.B. Defendant and M.W. found ways to communicate without others knowing, including the use of a social media application with a feature that automatically deletes messages after a period of time.

Defendant gave M.W. a $50 gift card to purchase "something nice to wear underneath [her] dress" for a school dance. She did not use the card. Later, defendant told M.W. to tell him what pieces of clothing she wanted because he was making an order. Using the gift card, defendant purchased bras and underwear for M.W. and left them in a box placed in the bushes near M.W.'s house. Male condoms and lubricant were also in the box. Defendant asked M.W. to see pictures of her wearing the undergarments; she tried them on and sent him a picture of her wearing only the undergarments.

M.W.'s mother asked to meet with a leader of the church about a matter involving defendant in late March 2019. Defendant voluntarily resigned his position at the church for violating terms of his employment in April 2019. Defendant confessed to "certain activities and interactions that he had" with M.W. in his resignation letter, which was shown during the bench trial.

**The Defense Case**

T.R. was a teacher at the school M.W. attended. T.R. testified she was a "mandated reporter," which meant she would have to make a report if she had a reasonable suspicion of the occurrence of child abuse. T.R. did not make a report regarding M.W. prior to March 2019 because she did not have a reasonable suspicion that M.W. was a victim of child abuse.

A.B. was also a teacher at that school. M.W. was a "teaching assistant" for A.B.'s class for a brief period of time until "the allegations were made." M.W. occasionally went to A.B.'s classroom "unannounced," including at times when A.B. had professional meetings, and M.W. was not allowed to stay. A.B. tried to establish "boundaries" for M.W. not to go to her classroom, but M.W. occasionally broke those boundaries and would not follow A.B.'s directions. A.B. had "repeated conversations" with M.W. about the appropriate times during which M.W. could contact her, T.R., and defendant. An "intervention" was held after M.W. broke that rule several times in which it was decided that M.W. needed to contact her therapist and her mother with certain issues as A.B., T.R., and defendant would be unavailable past a certain hour in the evening.

M.W. spoke with defendant and A.B. about the issues she struggled with, including her past issues with self-harm. M.W. brought up the subject of pornography or masturbation on more than one occasion. A.B. testified she and defendant mentioned to M.W. that she should confide in her parents, but when M.W. appeared unwilling to discuss this with her parents, A.B. and defendant suggested alternatives such as drawing, reading a book, praying, or playing the piano. A.B. did not believe she ever referred M.W. to defendant about the subject of pornography. A.B. never saw pictures on defendant's phone of herself or M.W. in underwear.

A.B. testified about the "hug" between M.W. and defendant. A.B. disbelieved M.W.'s characterization of the contact being inappropriate because A.B. saw the hug and it was "very brief." A.B. stated that M.W. apologized for lying and said the reason she

5.

said it was inappropriate was because she felt triggered by a previous encounter with someone else.

Defendant testified at his bench trial. Defendant thought M.W. had mental health issues when she started talking to him and A.B. about her issues. Defendant encouraged M.W. and her mother to consider finding a therapist, but it was decided that he could "help fill that void" in the meantime after speaking with M.W.'s parents.

Defendant gave members in his youth group, including M.W., boxes of items on multiple occasions. In one particular box for M.W., defendant put underwear that he purchased after she suggested "nicer looking underwear" might help her body-image issues. Two condoms and lubricant were also put in the box because M.W. expressed interest in those items. Defendant denied putting a vibrator in the box and denied ever "slipp[ing] a vibrator" into M.W.'s backpack at school. He also denied ever instructing M.W. on how to use a vibrator. Defendant neither asked her for pictures wearing the undergarments nor suggested that she "owed [him] in some way." He denied ever telling M.W. to think about him while she masturbated and denied having sexual desires for M.W. He further denied ever discussing having a "threesome" with M.W. and A.B.

## DISCUSSION

### 1. Sufficiency of the Evidence

Defendant contends the evidence was insufficient to support counts 1 and 2. The People disagree on both counts. We agree with the People.

#### A. Standard of Review

In considering a challenge to the sufficiency of the evidence, we assess "the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Snow* (2003) 30 Cal.4th 43, 66.) In doing so, we view "the trial evidence in the light most favorable to the prosecution and presum[e] every fact the jury

6.

could reasonably deduce from that evidence." (*People v. Pearson* (2012) 53 Cal.4th 306, 319.) " ' "We do not reweigh evidence or reevaluate a witness's credibility." ' " (*People v. Ramirez* (2022) 13 Cal.5th 997, 1118 (*Ramirez*).) " 'Substantial evidence includes circumstantial evidence and any reasonable inferences drawn from that evidence.' " (*People v. Brooks* (2017) 3 Cal.5th 1, 57.)

Under this standard of review, reversal is "unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].' " (*People v. Bolin* (1998) 18 Cal.4th 297, 331.) " ' " '[I]f the circumstances reasonably justify the jury's findings, the judgment may not be reversed simply because the circumstances might also reasonably be reconciled with a contrary finding.' " ' " (*Ramirez, supra*, 13 Cal.5th at p. 1118.)

### B. *Communicating with a Minor with the Intent to Commit a Sexual Offense*

On count 1, defendant argues the evidence did not prove he intended to sexually penetrate M.W.

Section 288.3, subdivision (a) proscribes the act of contacting or communicating with a minor with intent to commit a specified offense involving the minor. One specified offense is section 289. (§ 288.3, subd. (a).)

Section 289, subdivision (h) provides: "Except as provided in Section 288, any person who participates in an act of sexual penetration with another person who is under 18 years of age shall be punished by imprisonment in the state prison or in a county jail for a period of not more than one year." " 'Sexual penetration' " is defined as "the act of causing the penetration, however slight, of the genital or anal opening of any person or causing another person to so penetrate the defendant's or another person's genital or anal opening for the purpose of sexual arousal, gratification, or abuse by any foreign object, substance, instrument, or device, or by any unknown object." (§ 289, subd. (k)(1).)

7.

Substantial evidence in the record supports defendant's conviction on count 1. The record shows defendant bought bras and underwear for M.W. and then asked her for pictures in the undergarments. He told her it was okay to watch pornography and explained to her "step-by-step" how to masturbate. In doing so, he suggested she use her hands, vibrators, or small objects, and gave her vibrators to use. He also gave her male condoms and lubricant. Additionally, M.W. testified he told her that "he wouldn't mind having a threesome" with her and A.B. (See *Ramirez, supra*, 13 Cal.5th at p. 1118 [" 'unless the testimony is physically impossible or inherently improbable, testimony of a single witness is sufficient to support a conviction' "]; see also *People v. Houston* (2012) 54 Cal.4th 1186, 1215 [" 'We do not reweigh evidence or reevaluate a witness's credibility.' "].) From this, a trier of fact could reasonably have concluded defendant communicated with M.W. with the intent to have her commit an act of sexual penetration on herself and this was done for his own sexual gratification.

Defendant suggests his actions could instead be understood as "extreme measures [which] were necessary to save an individual who was on the verge of self-harm." This claim is unavailing. Even assuming such an alternative explanation has support in the record, reversal is not warranted under the applicable standard of review. (See *People v. Jennings* (2010) 50 Cal.4th 616, 639 ["If the circumstances reasonably justify the findings made by the trier of fact, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding."].) Instead, we may reverse only if "it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].' " (*People v. Bolin, supra*, 18 Cal.4th at p. 331.) We do not reach that conclusion here.

Considering the evidence in the record, the trier of fact could reasonably have concluded that defendant intended for M.W. to penetrate herself for his own sexual gratification.

### C. Annoying or Molesting a Minor

On count 2, defendant argues the evidence presented did not prove that his conduct was motivated by a sexual interest in M.W.

"Every person who annoys or molests any child under 18 years of age shall be punished by a fine not exceeding five thousand dollars ($5,000), by imprisonment in a county jail not exceeding one year, or by both the fine and imprisonment." (§ 647.6, subd. (a)(1).) "[A] violation of Penal Code section 647.6, subdivision (a) requires proof of the following elements:  (1) the existence of objectively and unhesitatingly irritating or annoying conduct; (2) motivated by an abnormal sexual interest in children in general or a specific child; (3) the conduct is directed at a child or children, though no specific child or children need be the target of the offense; and (4) a child or children are victims." (*People v. Phillips* (2010) 188 Cal.App.4th 1383, 1396.)

Contrary to defendant's claim, substantial evidence in the record shows his conduct was motivated by a sexual interest in M.W.  As we stated above, defendant told M.W. that he would not mind having a "threesome" with her and A.B.  Defendant bought bras and underwear for M.W. and asked her to send him pictures in the undergarments. Male condoms and lubricant were also in the box of undergarments.  In addition, defendant gave M.W. several vibrators throughout the course of their relationship. Although defendant similarly suggests these actions were motivated by something other than a sexual interest, i.e., to help M.W., this argument is unavailing under the applicable standard of review.  (See *People v. Jennings, supra*, 50 Cal.4th at p. 639.)

On this record, a reasonable trier of fact could find beyond a reasonable doubt that defendant's conduct was motivated by a sexual interest in M.W.  Substantial evidence supports his conviction on count 2.

### 2.  Mental Health Records

Defendant contends the trial court erred by not granting his discovery request or conducting an in camera review of M.W.'s mental health records.  The People first

contend defendant forfeited the issue and further contend he failed to demonstrate error in either respect. Exercising our discretion to address defendant's claim on the merits (*People v. Williams* (1998) 17 Cal.4th 148, 161, fn. 6), we conclude the court did not err in either manner asserted by defendant.

### A. Additional Background

Before trial and during motions in limine, defendant asserted M.W.'s mental health records were relevant to challenge her credibility. Defense counsel stated he had requested "all records, notes, and charts relating to [M.W.], as well as documents describing her psychiatric and emotional condition" from M.W.'s therapist at a hearing on May 12, 2023. The court asked defense counsel, "What legal authority do you assert that those documents are not covered by the [psychotherapist-patient] privilege?" Defense counsel stated:

> "Well, I believe that they're an issue in this case, and specifically as I mentioned to the Court off the record earlier, that [M.W.] has stated on multiple occasions that she told this therapist everything, and that she told her the whole story.

> "In fact, during the preliminary examination, when she was under oath, [M.W.] said this and it was right after she had been questioned about certain particular items and I'll bring up the condoms, lube and vibrator that she testified [defendant] had provided her with. And just after that, she said that she had told [the therapist] the whole story.

> "I don't believe that she did in fact tell [the therapist] this, and the reason I believe that is because [the therapist] was the reporting party to the police, and [the therapist] never brought up any of those items.

> "In addition, there is no photographic evidence of those items whereas there is photographic evidence of some of the other items that were provided to him—to her. And her explanation was that she had thrown them away, but I believe that it's relevant to the issue of whether she in fact did tell [the therapist] the whole story. I think it is extremely unlikely that [the therapist] would have told police—reported to police and not reported the statement about the lube, condoms and vibrator.

"So what my position is, is that [M.W.] was not truthful when she told the Court that those items were provided to her, that's it."

The court stated:

"So there's got to be a way to address the credibility issue and not violate the privilege and get to what you need to have answered. Specifically, whether or not [M.W.] informed the therapist that the defendant provided the items in question, the lubricant, the condoms, and a vibrator, is that the gist of it?"

Defense counsel agreed, noted he understood there were certain records protected by the psychotherapist-patient privilege, but asserted that privilege is limited, citing Evidence Code section 912 and *People v. Hammon* (1997) 15 Cal.4th 1117 (*Hammon*). Defense counsel continued:

"But … I think that I should be able to go through all of the records of the therapist because they're relevant to the issue of credibility. I'm specifically asking for records now that have to do with those particular items and anything that includes what was told to [the therapist].

"I think it's important for [M.W.]'s credibility to determine whether she said the things to [the therapist] that she says that happened to her. You know, the case really is about whether—there are two charges here, one is based on whether there was communication with intent to participate in an act of sexual penetration, and that's been, I believe, the People's position is that is the vibrator, the use of the vibrator by [M.W.] on herself, and then annoying or molesting a minor, which I believe refers to a request for pictures that were made by [defendant]."

The court confirmed with defense counsel that M.W. had been in therapy with that therapist for several years. The court then stated:

"If the Court were to review any records in camera, the Court would review the records that pertain to the period that is set forth in the Information, which is July 29, 2018 through March 28, 2019. There may be an argument for maybe a month or two after March 28, 2019, as there may have been discussions about whatever occurred through March 28[], but for the Court to go before July 29, 2018, and for any distance of sometime past March 28, 2019, I think would be inappropriate.

"The Court is not at this time finding that it would be appropriate to admit any record or any communication over the privilege. The Court is

11.

going to do research and I'm going to rely on counsel to provide me with your Points and Authorities in that regard.

"So I would be inclined to hear whether or not [M.W.] told the therapist anything about those three items, I think that would address quite a bit."

The court held an evidentiary hearing at which the therapist testified. With defense counsel's approval, the court conducted the examination. The following colloquy occurred:

"THE COURT: All right, my question to you is, at any time during your therapy with [M.W.], has [M.W.] ever mentioned to you that a certain individual, [defendant], provided her with a pack of condoms, lubricant, and a vibrator, is that the gist of it, counsel?

"[DEFENSE COUNSEL]: Yes.

"THE [THERAPIST]: So did my client tell me that?

"THE COURT: Yes.

"THE [THERAPIST]: Yes.

"THE COURT: Did you hear the answer?

"[DEFENSE COUNSEL]: No.

"THE COURT: She said yes.

"[DEFENSE COUNSEL]: Oh."

The court then stated:

"Based on that answer, I'm not going to compel any further documents unless somebody can convince me that it's appropriate. She can testify as to what she just said and in terms of the basis, the legal basis in which there would be some type of attack towards those records, it would be based on impeachment to test the credibility of [M.W.] based on what the therapist just said, I don't see that there and it would basically be the Court reviewing the records in camera as some type of fishing expedition. The therapist just indicated what the Court would be looking for."

12.

Defense counsel expressed disagreement with the court's proposed course of action.  The court added:

> "[The] Court is satisfied that there is insufficient evidence to require any additional disclosure of any type of patient[-]therapist records from [M.W.] and this therapist.  The Court is satisfied that the very narrow purpose, the Court is satisfied with the testimony from this therapist.  And the Court, as mentioned earlier, any further review would simply be a fishing expedition in the view of this Court.  So for those reasons the Court is going to deny that request and we'll proceed with the information provided by the therapist in response to—actually, as she relayed the information to law enforcement, whichever is documented in the peace officer's report and she would be subject to direct and cross-examination pertaining to her disclosure.  Also as to the statement pertaining to the three items, the condoms, the lubricant, and the vibrator.  I think that is fair game."

### B.  Analysis

Defendant argues he was entitled to discovery of M.W.'s mental health records under *Hammon, supra*, 15 Cal.4th 1117 and *Davis v. Alaska* (1974) 415 U.S. 308 (*Davis*).  He asserts his need for the information to challenge M.W.'s credibility outweighs her interest in confidentiality.

"[T]he due process clause requires the 'government' to give the accused all 'material' exculpatory evidence 'in its possession,' even where the evidence is otherwise subject to a state privacy privilege, at least where no clear state policy of 'absolute' confidentiality exists."  (*People v. Webb* (1993) 6 Cal.4th 494, 517.)  "[T]he mental illness or emotional instability of a witness can be relevant on the issue of credibility, and a witness may be cross-examined on that subject, if such illness affects the witness's ability to perceive, recall or describe the events in question."  (*People v. Gurule* (2002) 28 Cal.4th 557, 591–592.)

"[A]ll 'confidential communication[s] between patient and psychotherapist' " are protected under the psychotherapist-patient privilege.  (*People v. Cabral* (1993) 12 Cal.App.4th 820, 826, first bracketed insertion added, quoting Evid. Code, § 1014.)

This includes " 'information, including information obtained by an examination of the patient, transmitted between a patient and his psychotherapist in the course of that relationship and in confidence by a means which, so far as the patient is aware, discloses the information to no third persons other than those who are present to further the interest of the patient in the consultation.' " (*People v. Gonzales* (2013) 56 Cal.4th 353, 371, quoting Evid. Code, § 1012.)

"The Sixth Amendment to the Constitution guarantees the right of an accused in a criminal prosecution 'to be confronted with the witnesses against him.' " (*Davis, supra*, 415 U.S. at p. 315.) "Confrontation means more than being allowed to confront the witness physically. 'Our cases construing the [confrontation] clause hold that a primary interest secured by it is the right of cross-examination.' " (*Ibid.*)

The Supreme Court of the United States in *Davis* held that the defendant's constitutional right to confront adverse witnesses was violated when he was prevented from cross-examining a prosecution witness at trial on the basis that the sought-after information was confidential under state law. (*Davis, supra*, 415 U.S. at pp. 319–320.) In *Hammon*, the Supreme Court of California noted *Davis* involved a defendant's trial rights only. (*Hammon, supra*, 15 Cal.4th at p. 1124.) The *Hammon* court declined to confer a right to discover privileged psychiatric information before trial. (*Id.* at p. 1127.) In doing so, the court reasoned:

> "When a defendant proposes to impeach a critical prosecution witness with questions that call for privileged information, the trial court may be called upon, as in *Davis*, to balance the defendant's need for cross-examination and the state policies the privilege is intended to serve. [Citation.] Before trial, the court typically will not have sufficient information to conduct this inquiry; hence, if pretrial disclosure is permitted, a serious risk arises that privileged material will be disclosed unnecessarily." (*Hammon, supra*, 15 Cal.4th at p. 1127.)

Here, defendant requested records pertaining to what M.W. told her therapist about condoms, lubricant, and vibrators given by defendant. The trial court held an

evidentiary hearing and asked the therapist whether M.W. had ever mentioned to her that defendant provided M.W. with a pack of condoms, lubricant, and a vibrator. Before the witness responded, the court confirmed with defense counsel that this question was the core of the inquiry. The therapist responded, "Yes." The court then denied in camera review of the records, noting the therapist "just indicated what the Court would be looking for" and any further review of the records would amount to a "fishing expedition."

Defendant claims the trial court's ruling was erroneous. We are not convinced. The records defendant sought through discovery, M.W.'s mental health records, were privileged. (Evid. Code, § 1014.) We recognize this privilege is not insurmountable. (Evid. Code, § 912 [waiver]; *Davis, supra*, 415 U.S. at pp. 319–320; *Hammon, supra*, 15 Cal.4th at p. 1127.) Indeed, the trial court allowed limited questioning of the therapist regarding whether M.W. had divulged certain information to the therapist. But the court's course of action addressed the basis asserted for the information, that her records could show M.W. had not told the therapist that information.[2] The therapist answered the sole question posed to her. Defendant's showing for discovery was inadequate, and the trial court did not err by declining to grant discovery of M.W.'s mental health records. (See, e.g., *People v. Pack* (1988) 201 Cal.App.3d 679, 686 ["A person's credibility is not in question merely because he or she is receiving treatment for a mental health problem."], disapproved on another ground in *Hammon, supra*, 15 Cal.4th at p. 1123.)

---

[2]     To the extent defendant additionally argues on appeal that discovery of the records were also "relevant to address [M.W.]'s ability to perceive, recall, or describe the events in question," we treat this argument as waived because defendant failed to raise it below. (*People v. Arredondo* (2019) 8 Cal.5th 694, 710 ["As a general rule, a defendant's failure to object to an alleged trial error relieves an appellate court of the obligation to consider the claim on review."]; *People v. Williams* (1999) 20 Cal.4th 119, 128 [failure to bring an issue to the attention of the trial court and the opposing party waives the right to raise the issue on appeal].) Defendant asserted below that the records were relevant to challenge M.W.'s credibility as to whether she had in fact told her therapist certain information. But defendant did not argue that the records were relevant to address M.W.'s ability to perceive, recall, or describe the events in question.

Nor did the trial court abuse its discretion by declining to conduct an in camera review of the records. (See *People v. Lewis and Oliver* (2006) 39 Cal.4th 970, 992 [reviewing the court's ruling for abuse of discretion].) As we stated above, the court held an evidentiary hearing for the defense to obtain the sought-after information from the therapist, that is, whether M.W. had mentioned to the therapist that defendant provided M.W. with "condoms, lubricant and a vibrator." The therapist answered that question affirmatively. It cannot be said that the court's subsequent decision not to review the records in camera was irrational or arbitrary. (See *People v. Carmony* (2004) 33 Cal.4th 367, 377 ["a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it"].)

## DISPOSITION

The judgment is affirmed.


HILL, P. J.

WE CONCUR:


MEEHAN, J.


DESANTOS, J.

16.