Filed 9/26/17

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| FACEBOOK, INC., | D072171 |
| Petitioner, | (San Diego County Super. Ct. No. SCD268262) |
| v. | |
| THE SUPERIOR COURT OF SAN DIEGO COUNTY, | |
| Respondent; | |
| LANCE TOUCHSTONE, | |
| Real Party in Interest. | |

ORIGINAL PROCEEDINGS in mandate challenging an order of the Superior Court of San Diego County, Kenneth K. So, Judge. Petition granted.

Perkins Coie LLP, James G. Snell and Christian Lee for Petitioner.

No appearance for Respondent.

Office of the Alternate Public Defender, Megan Marcotte, Chief Deputy Alternate Public Defender, and Katherine I. Tesch, Deputy Alternate Public Defender, for Real Party in Interest.

The issue whether a criminal defendant has a constitutional right to obtain social media records from an electronic communication or remote computing service is currently under review by the California Supreme Court in *Facebook, Inc. v. Superior Court* (2015) 240 Cal.App.4th 203, review granted December 16, 2015, S230051 (*Facebook I*). In this case, we address the same issue knowing that our high court will likely grant review and hold this matter pending a decision in *Facebook I*. Nonetheless, we publish our thoughts agreeing with the conclusion in *Facebook I* for their potential persuasive value. (Cal. Rules of Court, rules 8.1105(e), 8.1115(e)(1) [published opinions for which the Supreme Court has granted review have no binding or precedential value but may be cited for potential persuasive value only].) Accordingly, the petition for writ of mandate is granted.

FACTUAL AND PROCEDURAL BACKGROUND

Real party in interest Lance Touchstone is awaiting trial in respondent San Diego County Superior Court (the trial court) on a charge of attempting to murder Jeffrey R. (the victim). (Pen. Code, §§ 664/187, subd. (a).) After the shooting incident, the victim has been active on his personal Facebook, Inc., (Facebook) account. He posted updates of his physical recovery from the hospital, requesting private messages over the Facebook messaging system. On the public portion of his Facebook page that is visible to all Facebook users, the victim posted updates of court hearings in this case, asking his friends to attend the preliminary hearing. In public posts the victim also discussed his personal use of guns and drugs, and described his desire to rob and kill people.

2

Believing nonpublic content of the victim's Facebook account might provide exculpatory evidence helpful in preparing for trial, Touchstone served petitioner Facebook[1] with a subpoena for the subscriber records and contents of the victim's Facebook account, including timeline posts, messages, phone calls, photos, videos, location information and user-input information from account inception to the present date. Facebook filed a motion to quash the subpoena on the ground the Stored Communications Act (SCA) (18 U.S.C.[2] § 2701 et seq.) prohibited disclosure of the victim's account contents. In an accompanying declaration, counsel for Facebook stated that Touchstone could obtain the requested contents directly from the victim or by working with the prosecutor to obtain a search warrant based on probable cause.

Touchstone opposed the motion on the grounds he had a plausible justification for requesting the contents of the victim's account, he should be allowed to obtain the contents because law enforcement could do so by a search warrant, his constitutional right to a fair trial trumped the SCA, and he could not obtain the contents from other sources because the victim was uncooperative and the prosecutor had not obtained a search warrant. At oral argument, defense counsel represented that the prosecution

---

[1]     Founded in 2004, Facebook's "mission is to give people the power to build community and bring the world closer together. People use Facebook to stay connected with friends and family, to discover what's going on in the world, and to share and express what matters to them." (Facebook, Company Info <https://newsroom.fb.com/company-info/> [as of Sept. 25, 2017].) Users create a "profile" where they choose what to share, "such as interests, photos and videos, and personal information like current city and hometown." (Facebook, Products <https://newsroom.fb.com/products/> [as of Sept. 25, 2017].)

[2]     Undesignated statutory references are to title 18 of the United States Code.

refused to issue a search warrant for the material and that she has been unable to locate the victim to serve him with a subpoena. The trial court denied the motion to quash and ordered Facebook to produce the contents of the victim's account for in camera inspection by a certain date.

Facebook seeks a writ directing the trial court to vacate its order denying the motion to quash the subpoena and to enter a new order granting the motion to quash. Facebook contends the trial court abused its discretion by denying the motion to quash and ordering production of documents for in camera inspection because the SCA prohibits Facebook from disclosing the content of its users' accounts in response to a subpoena. Facebook further contends that compelling it to disclose the contents of the victim's account is not necessary to preserve Touchstone's constitutional right to a fair trial because Touchstone can obtain the contents directly from the victim or through the prosecutor via a search warrant.

Facebook contends this court should adhere to the decision in *Facebook I* that a criminal defendant has no constitutional right to pretrial discovery of information protected from disclosure by the SCA. Facebook contends writ review is needed because it cannot appeal the order denying the motion to quash; the trial court abused its discretion by ordering production of contents protected from disclosure by the SCA; Facebook risks civil liability if it complies with the order or contempt if it does not; and the statutory and constitutional issues involved are novel, of widespread interest, and the subject of conflicting trial court rulings. Facebook also seeks an immediate stay of the challenged order to remain in effect until this court rules on the writ petition.

4

We stayed the production order pending consideration of the petition and requested an answer. Touchstone filed an answer. We issued an order to show cause to the respondent trial court why the relief requested in the petition should not be granted and stayed all further proceedings in the trial court. We requested and obtained supplemental briefing on the following three questions: (1) Does the supremacy clause prohibit enforcement of the subpoenas? (See U.S. Const., art. VI; *Olszewski v. Scripps Health* (2003) 30 Cal.4th 798, 815 ["A state law actually conflicts with federal law 'where it is impossible for a private party to comply with both state and federal requirements . . . .' "]); (2) If the materiality of private electronic communications is shown during trial, can the trial court compel a subscriber (such as the victim) or a witness who is also a recipient of a private electronic communication from the victim to consent to disclosure by Facebook of electronic communications for an in camera review? (See § 2702(b)(3); *Juror Number One v. Superior Court* (2012) 206 Cal.App.4th 854); and (3) If the trial court may compel a witness to produce private electronic communications, what procedures or protections exist, or may be implemented to prevent a witness from deleting the communications?"

## DISCUSSION

### I. *THE SCA*

Congress passed the Electronic Communications Privacy Act of 1986 (ECPA) (Pub.L. No. 99–508 (Oct. 21, 1986) 100 Stat. 1848) to amend the federal wiretap law and protect against the unauthorized interception of electronic communications and afford privacy protection to electronic communications based on technological advances that

make it "possible for overzealous law enforcement agencies, industrial spies and private parties to intercept the personal or proprietary communications of others." (ECPA (Sen.Rep. No. 99–541, 2d Sess. pp. *1, 3 (1986) (Sen.Rep. No. 99–541), reprinted in 1986 U.S. Code Cong. & Admin. News at pp. 3555, 3557.) Chapter 119 of the ECPA (§§ 2510-2522) protects wire, oral, and electronic communications while in transit (Wiretap Act). (Scolnik, Protections for Electronic Communications: The Stored Communications Act and the Fourth Amendment (Oct. 2009) 78 Fordham L.Rev. 349, 375 & fn. 228 (Scolnik, Protections).) Chapter 121 of the ECPA created the SCA (§§ 2701-2712) to protect communications held in electronic storage. (Scolnik, Protections, at p. 375 & fn. 229.) Chapter 206 (§§ 3121-3127) restricts the use of pen registers (Pen Register Act). (Scolnik, Protections, at p. 375 & fn. 230.)

"The Fourth Amendment provides no protection for information voluntarily disclosed to a third party, such as an Internet Service Provider (ISP). [Citations.] [¶] To remedy this situation, the SCA creates a set of Fourth Amendment-like protections that limit both the government's ability to compel ISP's to disclose customer information and the ISP's ability to voluntarily disclose it. [Citation.] 'The [SCA] reflects Congress's judgment that users have a legitimate interest in the confidentiality of communications in electronic storage at a communications facility. Just as trespass [law] protects those who rent space from a commercial storage facility to hold sensitive documents, [citation], the [SCA] protects users whose electronic communications are in electronic storage with an ISP or other electronic communications facility.' " (*Juror Number One v. Superior Court*, *supra*, 206 Cal.App.4th at p. 860.)

Except as provided in section 2702(b) and (c), the SCA prohibits a person or entity providing electronic communication services or remote computing services to the public from "knowingly divulg[ing]" the contents of a communication while in electronic storage by that service, or which is carried or maintained on that service.[3] (§ 2702(a)(1) & (2).) Section 2702(b) and (c) contain exceptions that allow a provider to disclose a communication under certain circumstances. Section 2702(c) allows a provider to divulge information about a subscriber, but not the content of communications. Section 2702(b) sets forth eight exceptions to the section 2702(a) prohibition on disclosing contents of communications. Touchstone does not argue that any of these exceptions apply. Our independent review of these exceptions convinces us that none apply to the instant situation where a criminal defendant is asking a provider to divulge the contents of a subscriber's private communication. (See also Zwillinger & Genetski, *Criminal Discovery of Internet Communications Under the Stored Communications Act:  It's Not a Level Playing Field* (Winter 2007) 97 J. Crim. Law & Criminology 569, 584 ["None of the[ ] exceptions [in the SCA] provide a basis for a disclosure in response to a subpoena served by a criminal defendant, nor a court order secured at the defendant's request."] (Zwillinger, Criminal Discovery).)  Thus, there is no need for us to review each exception.  Instead, we discuss two exceptions relevant to our later discussion.

---

[3]     An "electronic communication service" is "any service which provides to users thereof the ability to send or receive wire or electronic communications."  (§ 2510(15).) A "remote computing service" means "the provision to the public of computer storage and processing services by means of an electronic communications system."  (§ 2711(2).)

First, a provider may divulge the contents of a communication as authorized by section 2703. (§ 2702(b)(2).) Section 2703 creates procedures for governmental entities to obtain certain information from providers. As relevant here, there is a warrant procedure for a governmental entity to obtain the contents of communications. (§ 2703(b).) Additionally, a provider may divulge the contents of a communication "with the lawful consent of the originator or an addressee or intended recipient of such communication, or the subscriber in the case of remote computing service." (§ 2702(b)(3).) Accordingly, under section 2702(b)(3), anyone can seek the contents of private electronic communications by obtaining the consent from the originator of the communication (i.e., the victim in this case), or any addressee or intended recipient of the communication.

Unless an exception applies, the language of section 2702(a)(1) and (2) broadly prohibits providers from voluntarily sharing subscribers' communications and does not distinguish between public and private content because this is done elsewhere. Specifically, section 2511, part of chapter 119 of the ECPA (§§ 2510-2522), addresses the interception and disclosure of communications, including electronic communications. Section 2511(2)(g)(i) provides: "It shall *not* be unlawful under this chapter *or chapter 121* of this title for any person—[¶] (i) *to intercept or access* an electronic communication made through an electronic communication system *that is configured so that such electronic communication is readily accessible to the general public*." (Italics added.) Chapter 121 is the SCA.

Thus, section 2511(2)(g)(i) makes express what is otherwise supported by logic—that anyone can retrieve electronic communications that are readily accessible to the general public. The purpose of the EPCA was to give the same Fourth Amendment protection to electronic communications as other types of communications. (*Juror Number One v. Superior Court*, *supra*, 206 Cal.App.4th at p. 860.) If electronic content (be it text, photos or videos) is readily accessible to the general public there is absolutely no need for the government to obtain a search warrant to view this content. Similarly, there is no need for a private individual to subpoena a service provider such as Facebook to obtain this information. Rather, like defense counsel did here, anyone can easily access this public information.

In contrast, if the user of an electronic communication service or remote computing service limits his or her intended audience, be it an audience of one or one thousand, the content is not readily accessible to the general public. Congress impliedly defined private electronic content as anything that is not readily accessible to the general public. (§ 2511(2)(g)(i).) Accordingly, to determine whether an electronic communication is public or private, we need not engage in arbitrary line drawing based on the number of people who received an electronic communication.

An analogy may be useful. Families often use the regular postal service to mail holiday greetings to friends and relatives informing them of highly personal events such as births, deaths, illness or job loss, including personal photographs. Such information does not become "less private" because the particular family has many friends and relatives. Similarly, a Facebook subscriber who posts electronic holiday greetings to

9

specific individuals does not lose privacy protection because the user posts to a large group of individuals in contrast to a small group of individuals.

To further the analogy, the sender of a private mail communication can later decide to publish the contents of that private communication in a newspaper; thus, making the private communication readily accessible to the general public. A Facebook user can do the same thing using the internet. An electronic communication originally configured to be private, meaning it is restricted to specific individuals, can later be made accessible to the general public by posting it where anyone can access the communication. Under both instances, a once private communication forever loses privacy protection when the sender makes the communication readily accessible to the general public.

## II. *CRIMINAL DISCOVERY*

Touchstone contends that forcing him to proceed to trial without the authenticated production of the victim's social media records violates his constitutional rights to a fair trial, effective assistance of counsel, confrontation, and compulsory process. He asserts that his constitutional rights prevail over the victim's right to privacy contemplated in the SCA. Touchstone argues that respondent court should be given the discretion to review the victim's social media records in camera and that the victim's privacy rights are adequately protected by a careful in camera review that bars disclosure of irrelevant records and bans the dissemination of records produced without appropriate protective orders. Touchstone asks us to declare the SCA unconstitutional insofar as it deprives trial courts the discretion to conduct an in camera review of social media records.

10

Before we can address whether trial courts have the discretion to conduct an in camera review of social media records, we must address the constitutionality of the SCA in so far as it unambiguously prohibits providers from voluntarily sharing subscribers' communications. Stated differently, if the SCA prohibition on providers voluntarily sharing subscribers' communications is constitutional, then trial courts lack the discretion to conduct an in camera review. We review the constitutionality of a statute de novo. (*United States v. Xiaoying Tang Dowai* (9th Cir. 2016) 839 F.3d 877, 879.) Out of respect for the coordinate branches of government, a court can invalidate duly enacted statutes "only upon a plain showing that Congress has exceeded its constitutional bounds." (*United States v. Morrison* (2000) 529 U.S. 598, 607.)

As a preliminary matter, the United States Supreme Court stated 40 years ago that "[t]here is no general constitutional right to discovery in a criminal case." (*Weatherford v. Bursey* (1977) 429 U.S. 545, 559; *Wardius v. Oregon* (1973) 412 U.S. 470, 474 ["[T]he Due Process Clause has little to say regarding the amount of discovery which the parties must be afforded."].) However, due process requires the prosecution to disclose favorable, material evidence to the accused. (*Brady v. Maryland* (1963) 373 U.S. 83, 87.) The California Supreme Court has similarly recognized that " '[t]here is no general constitutional right to discovery in a criminal case.' " (*People v. Valdez* (2012) 55 Cal.4th 82, 109-110 [quoting *Weatherford*, at p. 559]; *People v. Maciel* (2013) 57 Cal.4th 482, 508 [same]; *People v. Mena* (2012) 54 Cal.4th 146, 160 [same]; see also *Schaffer v. Superior Court* (2010) 185 Cal.App.4th 1235, 1243 ["Both the United States and California Supreme Courts have held that a criminal defendant does not possess a general

11

constitutional right to discovery."].)  We examine Touchstone's claims against this backdrop.

A.  *Right to Confrontation*

The confrontation clause of the Sixth Amendment to the United States Constitution provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."  The confrontation clause applies to the states through the Fourteenth Amendment to the United States Constitution. (*Pointer v. Texas* (1965) 380 U.S. 400, 403.)  The United States Supreme Court explained that "the principal evil at which the Confrontation Clause was directed was the civil-law mode of criminal procedure, and particularly its use of *ex parte* examinations as evidence against the accused."  (*Crawford v. Washington* (2004) 541 U.S. 36, 50.)  The court, however, has not yet resolved the issue whether "the right of confrontation embraces a right to discover information necessary to make cross-examination effective." (*People v. Abel* (2012) 53 Cal.4th 891, 931.)  As we shall explain, the California Supreme Court has addressed this issue, but it remains to be seen whether the issue has been resolved.

The court in *People v. Reber* (1986) 177 Cal.App.3d 523 (*Reber*) found that the court should weigh, at an in camera hearing, the defendant's constitutional right to confront a witness against the witness's privilege to keep psychiatric records confidential. (*Id.* at p. 532.)  The California Supreme Court overruled *Reber* and its progeny in *People v. Hammon* (1997) 15 Cal.4th 1117 (*Hammon*):  "In seeking disclosure of documents protected by the psychotherapist-patient privilege, defendant relied on [*Reber*] and cases

12

following that decision. [Citations.] This line of authority, we now determine, is not correct. The court in *Reber* believed the confrontation clause of the Sixth Amendment (U.S. Const., 6th Amend.), as interpreted in *Davis v. Alaska* (1974) 415 U.S. 308, required pretrial disclosure of privileged information when the defendant's need for the information outweighed the patient's interest in confidentiality. In authorizing disclosure *before trial*, however, *Reber* went farther than *Davis* required, with insufficient justification." (*Hammon*, at p. 1123, italics added.)[4]

In *Hammon*, the California Supreme Court "decline[d] to extend the defendant's Sixth Amendment rights of confrontation and cross-examination to authorize pretrial disclosure of privileged information" (*Hammon, supra,* 15 Cal.4th at p. 1128) and held "the trial court did not err in refusing to review in camera the documents sought by subpoena." (*Ibid.*) Thus, even upon a sufficient showing, a trial court is not required to allow pretrial "review or grant discovery of privileged information in the hands of third party psychotherapy providers." (*Id.* at p. 1119.) Rather, access to such information must await a showing of materiality during trial, with the trial court balancing the defendant's need for cross-examination with the policies the privilege is intended to serve. (*Id.* at p. 1127.) As one treatise explained, the trial court conducts an in camera hearing during trial to determine if the defendant's need for the material outweighs the

---

4    Justice Mosk, who concurred in the result that quashing the subpoenas duces tecum that defendant served on the psychotherapists was harmless beyond a reasonable doubt, went on to note that the majority did "not disapprove *Reber's* holding because they conclude that it is wrong. Rather, they do so because the United States Supreme Court has not yet concluded that it is right." (*Hammon*, *supra*, 15 Cal.4th at pp. 1130, 1129.)

13

statutory privilege. (1 Rucker & Overland, Cal. Crim. Practice: Motions, Jury Instns. & Sentencing (4th ed.) § 15:54.)

Facebook relies on *Hammon* for the proposition that there is no general constitutional right to discovery in a criminal case under the Fifth or Sixth Amendments. In *Facebook I*, our high court is reexamining *Hammon*, indicating that the issues before it include whether the appellate court properly applied the SCA and *Hammon* to conclude defendants were not entitled to pretrial access to records in the possession of Facebook and others, and whether it should limit or overrule *Hammon*.

Since deciding *Hammon* the California Supreme Court has cited it, in varying contexts, for the proposition that a criminal defendant is not entitled to pretrial discovery. (*People v. Valdez*, *supra*, 55 Cal.4th at pp. 105-110 [no constitutional violation in withholding witnesses' identities before trial]; *People v. Maciel*, *supra*, 57 Cal.4th at pp. 507-508 [same]; *People v. Clark* (2011) 52 Cal.4th 856, 983-984 [no Sixth Amendment violation where the prosecution does not disclose a witness's criminal conviction prior to guilt phase]; *People v. Martinez* (2009) 47 Cal.4th 399, 454, fn. 13 [Sixth Amendment does not require granting a pretrial discovery motion for juvenile records]; *People v. Prince* (2007) 40 Cal.4th 1179, 1234, fn. 10 [defendant's Sixth Amendment claim to pretrial discovery of an FBI database on "weak footing"]; *People v. Gurule* (2002) 28 Cal.4th 557, 592-594 [no right to pretrial discovery of records protected by the psychotherapist-patient and attorney-client privileges]; *People v. Anderson* (2001) 25 Cal.4th 543, 577, fn. 11 ["the confrontation clause gives no right to pretrial discovery that would override a statutory or constitutional privilege"]; *Alvarado v, Superior Court*

14

(2000) 23 Cal.4th 1121, 1134-1135 [denying pretrial disclosure of witness identities is not constitutionally impermissible].)  These cases show that the California Supreme Court has not confined the principles articulated in *Hammon* to the psychotherapist-patient privilege.  "As an intermediate appellate court we take the law as we find it and do not reexamine doctrines approved by the Supreme Court with a view to enunciating a new rule of law."  (*Fuller v. Standard Stations, Inc.* (1967) 250 Cal.App.2d 687, 694.)  Any change in the law must be made by the California Supreme Court.

Accordingly, we reject Touchstone's assertion that the confrontation clause of the Sixth Amendment mandates disclosure of otherwise privileged information for purposes of his pretrial investigation of the prosecution's case.

B.  *Right to Compulsory Process and Due Process*

The Sixth Amendment to the United States Constitution provides that a criminal defendant has the right "to have compulsory process for obtaining witnesses in his favor." (U.S. Const., 6th Amend.)  The California Constitution similarly provides:  "The defendant in a criminal cause has the right . . . to compel attendance of witnesses in the defendant's behalf."  (Cal. Const., art. I, § 15.)  The Sixth Amendment compulsory process clause guarantees "that criminal defendants have the right to the government's assistance in compelling the attendance of favorable witnesses at trial and the right to put before a jury evidence that might influence the determination of guilt."  (*Pennsylvania v. Ritchie* (1987) 480 U.S. 39, 56 (*Ritchie*).)  In *Ritchie*, the United States Supreme Court noted that it "has had little occasion to discuss the contours of the Compulsory Process Clause."  (*Id.* at p. 55.)  Nonetheless, the court concluded that the "compulsory process

15

provides no greater protections in this area than those afforded by due process" (*id.* at p. 56, italics omitted) noting it traditionally evaluates claims alleging a violation of the Sixth Amendment compulsory process clause "under the broader protections of the Due Process Clause of the Fourteenth Amendment." (*Ritchie*, at p. 56.)

Our high court appears to agree with this assessment, stating "we find no suggestion in *Ritchie* that the scope of a defendant's right to a fair trial is affected by the label attached to it." (*Delaney v. Superior Court* (1990) 50 Cal.3d 785, 805, fn. 18.) In light of this authority, and because Touchstone's claims implicate the fundamental fairness of trials, we do not separately analyze his claims under the compulsory process clause. Rather, we base our analysis on the due process clause of the Fourteenth Amendment to the United States Constitution. (*People v. Abel* (2012) 53 Cal.4th 891, 931 ["Claims such as defendant's implicate the fundamental fairness of trials and are therefore subject to analysis under the due process clause of the Fourteenth Amendment to the United States Constitution."].)

"[D]ue process is, in essence, the right to a fair opportunity to defend against the State's accusations. The rights to confront and cross-examine witnesses and to call witnesses in one's own behalf have long been recognized as essential to due process." (*Chambers v. Mississippi* (1973) 410 U.S. 284, 294.) "Under the Due Process Clause of the Fourteenth Amendment, criminal prosecutions must comport with prevailing notions of fundamental fairness. [The United States Supreme Court has] long interpreted this standard of fairness to require that criminal defendants be afforded a meaningful opportunity to present a complete defense." (*California v. Trombetta* (1984) 467 U.S.

16

479, 485.) A defendant's "right to present relevant evidence is not unlimited," however, and may " 'bow to accommodate other legitimate interests in the criminal trial process.' [Citations.] As a result, state and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials." (*United States v. Scheffer* (1998) 523 U.S. 303, 308.)

Citing *Ritchie*, *supra*, 480 U.S. 39, Touchstone asserts that the SCA must allow a mechanism through which criminal defendants, upon adequate showing, can obtain the same records "routinely used as a sword by the prosecution and government, so that relevant, exculpatory, material evidence contained at the same source may also be used as a shield." In *Ritchie*, a defendant charged with committing sexual offenses against his daughter sought confidential records maintained by a state protective services agency regarding his daughter, but a state statutory scheme prohibited public disclosure of such records, subject to specific exceptions. (*Id.* at p. 43.) One exception allowed the agency to disclose the records to a " 'court of competent jurisdiction pursuant to a court order.' " (*Id.* at pp. 43-44.)

Under these facts, the United States Supreme Court determined that the trial court erred in denying the request without inspecting the file, holding that due process of law required the government to disclose evidence that is helpful to the accused. (*Ritchie*, *supra*, 480 U.S. at p. 57, citing *Brady v. Maryland*, *supra*, 373 U.S. at p. 87.) The court also noted that the state Legislature allowed disclosure of the records when a court of competent jurisdiction "determine[d] that the information is 'material' to the defense of the accused." (*Id*. at p. 58.) *Ritchie* does not further Touchstone's argument because the

17

court, applying the rule of *Brady v. Maryland*, required that the government disclose the records, not a private nonparty like Facebook. Additionally, the state statute at issue in *Ritchie* allowed disclosure by court order. (*Ritchie*, at pp. 57-58.) Congress placed no such provision in the SCA.[5] The *Richie* court expressly declined to comment on whether its result would have differed had the state statute protected the files from "disclosure to anyone, including law-enforcement and judicial personnel." (*Id.* at p. 57, fn. 14.)

Citing *Rubio v. Superior Court* (1988) 202 Cal.App.3d 1343 (*Rubio*), Touchstone next contends that his right to a fair trial, the cross-examination of witnesses and presentation of a complete defense must prevail over the SCA, which unjustly awards prosecutorial access to social media records but provides no comparable access to criminal defendants. *Rubio* addressed the constitutional right to privacy in marital relations, particularly a videotape of sexual relations between a married couple that depicted sex acts supposedly similar to the acts petitioner allegedly performed on the minor child of the married couple. The minor child had viewed the videotape. (*Id.* at p. 1346.) In *Rubio*, our state high court followed *Ritchie* by ordering an in camera review of the videotape to determine whether petitioner's right to due process outweighed the married couple's constitutional right to privacy and their statutory privilege not to disclose confidential marital communications. (*Id.* at p. 1350.)

---

5    At least one commentator has suggested amendments to the SCA to provide a mechanism for criminal defendants and civil litigants to gain access to this information directly from a provider. (See Zwillinger, Criminal Discovery, *supra*, at pp. 597-598 [proposing amendments to the SCA to allow disclosure of contents of communications to criminal defendants or civil litigants].)

*Rubio* is inapposite as the matter did not involve a trial court ordering disclosure of material expressly prohibited from disclosure by a federal statute. The order here cannot be enforced without compelling Facebook to violate the SCA and thus runs afoul of the principle of federal supremacy. (*O'Grady v. Superior Court* (2006) 139 Cal.App.4th 1423, 1451 [subpoenas compelling account bailee to violate the SCA are unenforceable and should be quashed].) Additionally, *Rubio* was decided before our high court decided *Hammon*, *supra*, 15 Cal.4th 1117, which noted that a trial court typically does not have sufficient information before trial to balance a defendant's need for privileged information with the policies that the privilege is intended to serve. Finally, we note that the court ordered the married couple, the holders of the videotape, not a third party bailee, to produce it. (*Rubio*, *supra*, 202 Cal.App.3d at p. 1346.)

" 'The courts will presume a statute is constitutional unless its unconstitutionality clearly, positively, and unmistakably appears; all presumptions and intendments favor its validity.' [Citations.] When, as here, the contention is that a state rule violates due process, the defendant must show that the rule 'offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.' " (*City of Los Angeles v. Superior Court* (2002) 29 Cal.4th 1, 10-11.) The question is whether the SCA violates a fundamental conception of justice residing at the base of our civil and political institutions, and which defines " ' "the community's sense of fair play and decency," ' " (*Dowling v. United States* (1990) 493 U.S. 342, 353.) As our high court noted in examining a state rule, the exclusion of "evidence *at trial* den[ies] a criminal defendant due process only if [the rule] offend[s] fundamental principles of justice."

19

(*City of Los Angeles*, at p. 12.)  Here, Touchstone is seeking pretrial disclosure.  However, "the United States and California Supreme Courts have held that a criminal defendant does not possess a general constitutional right to discovery."  (*Schaffer v. Superior Court* (2010) 185 Cal.App.4th 1235, 1243.)

We are not persuaded by Touchstone's argument that the SCA must allow a mechanism through which criminal defendants can gain access to the same records routinely obtained by the prosecution and the government.  A criminal prosecution "is in no sense a symmetrical proceeding" with the prosecution "assum[ing] substantial affirmative obligations and accept[ing] numerous restrictions, neither of which are imposed on the defendant."  (*United States v. Turkish* (2d Cir. 1980) 623 F.2d 769, 774.)  "The system of criminal law administration involves not only this procedural imbalance in favor of the defendant, but also important aspects of the Government's law enforcement power that are not available to the defendant.  Subject to constitutional and statutory limits, the Government may arrest suspects, search private premises, wiretap telephones, and deploy the investigative resources of large public agencies.  Few would seriously argue that the public interest would be well served either by extending all of these powers to those accused of crime or by equalizing the procedural burdens and restrictions of prosecution and defendant at trial."  (*Id.* at pp. 774-775.)  As Facebook points out, the trial court's order allows a criminal defendant to obtain information that the government can only acquire with a warrant based on probable cause.  (§ 2703(b).)

Accordingly, we reject Touchstone's assertion that the due process clause of the Fourteenth Amendment mandates disclosure of otherwise privileged information for purposes of his pretrial investigation of the prosecution's case.[6]

In evaluating the constitutionality of the SCA it is critical to note that the SCA governs ISP's or other electronic communications facilities, such as Facebook. The SCA does not prohibit a provider from divulging electronic communications when an account holder, such as the victim, receives a subpoena to produce electronic information.[7] (§ 2702, subd. (b)(3).) Rather, Penal Code sections 1326 and 1327 set forth the procedure for defendants to obtain discovery possessed by third parties, such as the victim. These statutes "empower either party in a criminal case to serve a subpoena duces tecum requiring the person or entity in possession of the materials sought to

---

[6] Touchstone argues that the SCA violates his rights to effective assistance of counsel and to present a compete defense. Under the Sixth Amendment a criminal defendant has " 'the right . . . to have the Assistance of Counsel for his defence' " at all critical stages in the criminal process. (*Montejo v. Louisiana* (2009) 556 U.S. 778, 802.) Touchstone presented no argument or authority to support his contention that his right to effective assistance of counsel includes the ability to compel disclosure of privileged information from a nonparty in violation of a federal statute. (*People v. Stanley* (1995) 10 Cal.4th 764, 793 [general assertion unsupported by specific argument may be treated as forfeited].) The due process clause of the Fourteenth Amendment guarantees criminal defendants "a meaningful opportunity to present a complete defense." (*California v. Trombetta, supra,* 467 U.S. at p. 485.) This right is violated by evidentiary rules that "infring[e] upon a weighty interest of the accused" and are " 'arbitrary' or 'disproportionate to the purposes they are designed to serve.' " (*United States v. Scheffer, supra,* 523 U.S. at p. 308.) Again, Touchstone's argument is presented without any specific argument, and we fail to see how the SCA impacts his right to present a complete defense where the evidence he seeks is available through the victim.

[7] Facebook represents that any Facebook account holder, such as the victim, can access his or her account using the "Download Your Info" tool and user "Activity Log." (See <http://www.facebook.com/help/405183566203254/ > [as of Sept. 25, 2017].)

produce the information in court for the party's inspection."  (*Alford v. Superior Court* (2003) 29 Cal.4th 1033, 1045.)

The logistics of actually obtaining pretrial electronic communications from a third party witness is a matter that the parties can address with the trial court.  (See *Pitchess v. Superior Court* (1974) 11 Cal.3d 531, 535 ["[T]he right of an accused to seek discovery in the course of preparing his defense to a criminal prosecution is a judicially created doctrine evolving in the absence of guiding legislation."].)  Under the SCA, the trial court can order the account holder to consent to the disclosure by Facebook under section 2702(b)(3) which allows a provider to divulge the contents of a communication "with the lawful consent of the originator or an addressee or intended recipient of such communication, or the subscriber in the case of remote computing service." (§ 2702(b)(3); *Negro v. Superior Court* (2014) 230 Cal.App.4th 879, 899 [consent expressly given by account holder pursuant to court order constituted " 'lawful consent' " under the SCA]; *Juror Number One v. Superior Court*, *supra*, 206 Cal.App.4th at p. 865 ["If the court can compel Juror Number One to produce the information, it can likewise compel Juror Number One to consent to the disclosure by Facebook."]; *In re Subpoena Duces Tecum to AOL, LLC*  (E.D.Va. 2008) 550 F.Supp.2d 606, 613, fn. 5 [noting in dicta that court could order "under the pain of sanctions" nonparty witnesses to consent to AOL's disclosure of e-mails]; *Romano v. Steelcase Inc.* (2010) 907 N.Y.S.2d 650, 656 [requiring plaintiff to deliver "a properly executed consent and authorization" to Facebook and MySpace records]; *Al Noaimi v. Zaid* (D.Kan. Oct. 5, 2012, No. 11-1156-EFM) 2012 U.S. Dist. LEXIS 144061 at *10 [ordering the plaintiff/subscriber to execute

a consent for the release of e-mail communications and directing that the consent be attached to and served with the subpoena to the provider].)

As another court noted, the obligation to produce materials within a person's control "carries with it the attendant duty to take the steps necessary to exercise this control and retrieve the requested documents. . . . [A] party's disinclination to exercise this control is immaterial, just as it is immaterial whether a party might prefer not to produce documents in its possession or custody." (*Flagg v. City of Detroit* (E.D.Mich. 2008) 252 F.R.D. 346, 363.) Should the third party witness refuse to comply with a subpoena, the court can immediately order the witness to comply and fashion an appropriate order for noncompliance. (See, e.g., Pen. Code, § 1054.5, subds. (b) & (c) [describing possible court orders for failing to comply with criminal discovery statutes].) To avoid spoliation the trial court can order the prosecution to request that Facebook take all necessary steps to preserve records and other evidence in its possession pending the issuance of a further court order. (§ 2703(f) ["A provider of wire or electronic communication services or a remote computing service, upon the request of a governmental entity, shall take all necessary steps to preserve records and other evidence in its possession pending the issuance of a court order or other process."].)

Touchstone complains that the defense team has not been able to locate the victim to serve him with a subpoena and the victim has a history of combative and defiant behavior with law enforcement. Touchstone is also concerned about spoliation, arguing that a savvy account holder can peruse their social media accounts, deleting only those

records that appear harmful or damaging within a matter of minutes of receiving a subpoena.

As a threshold matter, these concerns apply equally to paper documents and are not unique to electronic documents stored by third party providers. As one court noted, "it would be far from irrational for Congress to conclude that one seeking disclosure of the contents of e-mail, like one seeking old-fashioned written correspondence, should direct his or her effort to the parties to the communication and not to a third party who served only as a medium and neutral repository for the message." (*O'Grady v. Superior Court*, *supra*, 139 Cal.App.4th at p. 1446.) In any event, we are not persuaded that Touchstone exhausted his efforts to locate the victim. Here, the defense team attempted to locate the victim by leaving two business cards at an address and contacting the prosecution to arrange an interview. It does not appear that Touchstone has sought a court order directing the People to assist in serving the subpoena. As Facebook notes, the victim is the complaining witness and it is reasonable to infer that the prosecution will be in contact with him before the start of trial.

As to potential spoliation, the trial court issued an order on March 16, 2017, requiring Facebook to preserve the victim's Facebook records, and directing Facebook and law enforcement to not disclose the existence of the preservation order. In a sworn declaration, counsel for Facebook represented that on March 21, 2017, Facebook preserved the victim's account. At a minimum, the victim's Facebook records are preserved to this date. In summary, Touchstone's concerns and the logistics of obtaining

24

electronic communications directly from an account holder are not insurmountable, nor do they render the SCA unconstitutional.

Finally, the records Touchstone seeks are also available by subpoena to any addressee or intended recipient of the private communications. (§ 2702(b)(3).) Touchstone made no showing that he contacted any of the victim's Facebook "friends" who were recipients of the private communications to obtain the desired information.[8] Alternatively, Touchstone can wait until trial to seek the victim's private Facebook records. At that time, when the victim's private Facebook communications become relevant to the defense, the trial court can take a recess and order the victim to consent to Facebook's production of his private Facebook communications for in camera review. The logistics of the potential production during trial is a matter that can, and should, be addressed with the trial court before trial commences.

## III. *SUMMARY*

The SCA expressly prohibits electronic communication service providers from "knowingly divulg[ing] to any person or entity the contents of a communication." (§ 2702(a)(1).) This statutory prohibition is subject to limited exceptions, none of which apply. (§ 2702(b)(1)-(8).) As we have discussed, Touchstone's constitutional challenges to the SCA lack merit. Accordingly, the supremacy clause (U.S. Const., art. VI) prohibits enforcement of the trial court's order because "California's discovery laws cannot be

---

8    Defense counsel can also work with the People to obtain a search warrant for the records, however, it appears that Touchstone has exhausted this avenue of relief.

25

enforced in a way that compels [a provider] to make disclosures violating the [SCA]."

(*Negro v. Superior Court*, *supra*, 230 Cal.App.4th at pp. 888-889.)

## DISPOSITION

Let a peremptory writ of mandate issue directing that respondent superior court vacate its order denying petitioner's motion to quash subpoenas duces tecum and vacate order allowing subpoena duces tecum, and enter a new order granting petitioner's motion. The temporary stay is vacated effective upon the issuance of the remittitur.

NARES, Acting P. J.

WE CONCUR:

HALLER, J.

O'ROURKE, J.

26